POLSINELLI LLP
JOHN W. PETERSON (SBN: 179343)
john.peterson@polsinelli.com
401 Commerce Street, Suite 900
Nashville, TN 37219
Telephone: (615) 259-1510
Facsimile: (615) 259-1573

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALESSANDRO PIROZZI; PIROZZI ENTERPRISES, LLC, dba SALERNO; CHEF ALESSANDRO PIROZZI, INC., dba ALESSA, <br><br>          Plaintiffs, <br><br> v. <br><br> FISERV CORPORATION; CARDCONNECT; and DOES 1 through 25, <br><br>          Defendants. | Case No. 8:21-cv-02130-CJC-ADS <br><br> **DEFENDANTS FISERV, INC.'S AND CARDCONNECT, LLC'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER** <br><br> Date:       February 28, 2022 <br><br> Time:       1:30 p.m. <br><br> Place:      Courtroom 9B <br><br> Judge:     Hon. Cormac J. Carney |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................... 1

II.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ................ 2

    A.    New York Law Governs ...................................................... 3

    B.    The Court Should Dismiss Plaintiffs' Claims Against Fiserv Because Fiserv Is Not a Party to the Agreement ................................... 4

    C.    Neither Allessandro Pirozzi Nor Salerno Have Standing.................... 4

    D.    The Individual Claims Fail as a Matter of Law ............................... 5

        1.    Plaintiff Has Failed to Plead the Requisite Elements for Breach of Contract (Count II)....................................... 5

        2.    The Majority of Plaintiffs' Remaining Claims Fail Because the Only Duties Involved Arise from the Agreement........................................................... 6

            i.    Fraud/Intentional Misrepresentation (Count I) ............... 6

            ii.    Breach of Fiduciary Duty (Count IV) ........................... 8

            iii.   Accounting (Count III)........................................... 8

            iv.   Declaratory Relief (Count V).................................... 9

            v.    Conversion (Count VI)......................................... 10

            vi.   Negligence (Count VIII) ....................................... 10

            vii.  Money Had and Received (Count IX) ......................... 11

        3.    The Remaining Claims Should be Dismissed Because They Rely on Inapplicable California Law. .......................... 12

            i.    California Unfair Competition (Count VII).................. 12

            ii.    California Penal Code § 496 (Count X)...................... 12

    E.    Plaintiffs' Damages Are Limited to, at Most, $50,000.00 ................ 13

III.  IF NOT DISMISSED IN ITS ENTIRETY, AND/OR IN THE ALTERNATIVE, THIS ACTION MUST BE TRANSFERRED TO EASTERN DISTRICT OF NEW YORK ...................................................... 14

    A.    Forum Selection Clauses Are Presumed Valid and Enforceable ....... 14

    B.    The Agreement Specifies Suffolk County, New York, as the Proper Venue........................................................................ 15

i

|  | C. | Plaintiffs' Claims "Aris[e] Under" and/or "Relate[ ] to" the Agreement .................................................................................15 |
|  | D. | Enforcement of the Forum Selection Clause is Reasonable ...............16 |
|  | E. | Public Interest Factors Weigh in Favor of Transfer ...........................18 |
|  | F. | Fiserv Can Also Enforce the Forum-Selection Clause .......................19 |
| IV. | CONCLUSION ...............................................................................................19 |

ii

81360170.10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfasigma USA, Inc. v. First Databank, Inc.*,
  525 F. Supp. 3d 1088 (N.D. Cal. 2021) ............................................................ 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................... 2, 3

*In re Becker*,
  993 F.3d 731 (9th Cir. 2021) .......................................................................... 15

*Bell v. Twombly*,
  550 U.S. 554 (2007) ..................................................................................... 2, 3

*BYD Co. Ltd v. Khazai*,
  No. CV205530DMGAGRX, 2020 WL 3893310 (C.D. Cal. July
  10, 2020) ...................................................................................................... 10

*Cal-State Bus. Prods. & Servs., Inc. v. Ricoh*,
  12 Cal. App. 4th 1666 ................................................................................... 18

*Calloway v. Nieves*,
  No. 219CV01792KJMCKDP, 2021 WL 5893314 (E.D. Cal. Nov.
  29, 2021) ...................................................................................................... 10

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991) ...................................................................................... 15

*Cho v. Kalliagas*,
  No. 04-CV-3371 (NGG) (SMG), 2008 WL 924750 (E.D.N.Y. Apr.
  4, 2018) .......................................................................................................... 7

*Ciambrone v Metro. Life Ins. Co.*,
  No. 657016/2017, 2019 WL 854597 (N.Y. Sup. Ct. Feb. 22, 2019) .................. 9

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
  516 N.E.2d 190 (N.Y. 1987) ............................................................................ 7

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
  70 N.Y.2d 382 (1987) .................................................................................... 11

*Cleanview Dist. Grp. LLC v. LGL Holdings, LLC*,
    2021 WL 5969502 (C.D. Cal. Nov. 12, 2021) ............................................ 18, 19

*Command Cinema Corp. v. VCA Labs, Inc.*,
    464 F. Supp. 2d 191 (S.D.N.Y. 2006) .................................................... 10

*Ctr. for Rehab. and Nursing at Birchwood, LLC v. S & L Birchwood, LLC*,
    939 N.Y.S.2d 78 (N.Y. App. Div. 2012) ................................................... 8

*El-Nahal v. FA Mgmt., Inc.*,
    5 N.Y.S.3d 201 (2015) ........................................................................ 5

*Elghanian v. Elghanian*,
    717 N.Y.S.2d 54 (N.Y. App. Div. 2000) ................................................... 8

*EVEMeta, LLC v. Siemens Convergence Creators Corp.*,
    104 N.Y.S.3d 607 (2019) .................................................................... 13

*Fireman's Fund Ins. v. M.V. DSR Atl.*,
    131 F.3d 1336 (9th Cir. 1997) .......................................................... 15, 16

*Hudson Bay Master Fund Ltd. v. Patriot Nat., Inc.*,
    309 F. Supp. 3d 100 (S.D.N.Y. 2018) ...................................................... 7

*Jiminez v. Shahid*,
    922 N.Y.S.2d 123 (2011) .................................................................... 11

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................... 7

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ................................................................. 2

*Labajo v. Best Buy Stores*,
    478 F. Supp. 2d 523 (S.D.N.Y. 2007) .................................................... 11

*Lewis v. Liberty Mut. Ins. Co.*,
    953 F.3d 1160 ................................................................................. 17

*LP Digit. Sols. v. Signifi Sols., Inc.*,
    921 F. Supp. 2d 997 (C.D. Cal. 2013) ..................................................... 17

*Luong v. Ha The Luong*,
    126 N.Y.S.3d 850 (N.Y. Sup. Ct. 2020) ................................................... 8

iv

*M/S BREMEN v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ................................................................................................ 15

*Marino v. Dwyer-Berry Constr. Corp.*,
   193 A.D.2d 654 (N.Y. App. Div. 1993) .................................................................. 4

*Marte v. Graber*,
   924 N.Y.S.2d 720 (App. Term 2011) ................................................................... 11

*McMahan & Co. v. Bass*,
   673 N.Y.S.2d 19 (N.Y. App. Div. 1998) ................................................................. 9

*Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*,
   84 N.Y.2d 430 (1994) ........................................................................................... 13

*Morgenroth v. Toll Bros.*,
   876 N.Y.S.2d 378 (N.Y. App. Div. 2009) ............................................................... 8

*Nagel v. Twin Lab'ys, Inc.*,
   109 Cal. App. 4th 39 (2003) ................................................................................ 12

*Nedlloyd Lines B.V. v. Superior Court*,
   834 P.2d 1148 (Cal. App. Ct. 1992) ....................................................................... 3

*PFM Packaging Mach. Corp. v. ZMY Food Packing, Inc.*,
   131 A.D.3d 1029 (N.Y. App. Div. 2015) ................................................................ 4

*Reddy v. Mediscribes, Inc.*,
   No. EDCV191677JGBSPX, 2020 WL 2220202 (C.D. Cal. Feb. 18,
   2020) ....................................................................................................................... 3

*Richards v. Lloyd's of London*,
   135 F. 3d 1289 (9th Cir. 1998) ............................................................................ 17

*Rossetti v. Ambulatory Surgery Ctr. of Brooklyn, LLC*,
   125 A.D.3d 548 (1st Dep't 2015) ......................................................................... 10

*Sarmiento v. BMG Ent.*,
   326 F. Supp. 2d 1108 (C.D. Cal. 2003) ................................................... 15, 16, 17

*Schmidt v. Lorenzo*,
   894 N.Y.S.2d 641 (2010) ...................................................................................... 10

*Tompkins v. 23andMe, Inc.*,
   840 F.3d 1016 (9th Cir. 2016) ............................................................................. 17

v

*Torok v. Moore's Flatwork & Founds., LLC*,
  106 A.3d 1421 (N.Y. App. Div. 2013) ................................................. 7

*Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*,
  88 F. Supp. 3d 1156 (S.D. Cal. 2015) ................................................. 3

*Unitel Telecard Distrib. Corp. v. Nunez*,
  936 N.Y.S.2d 17 (N.Y. App. Div. 2011) ............................................. 9

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................ 7

*Zaklit v. Glob. Linguist Sols., LLC*,
  No. CV1308654MMMMANX, 2014 WL 12521725 (C.D. Cal.
  Mar. 24, 2014) ................................................................................... 18

*Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*,
  No. CV166370SJFAYS, 2017 WL 6729854 (E.D.N.Y. Oct. 31,
  2017) .................................................................................................... 9

**Statutes**

28 U.S.C. section 1404(a) ..................................................................*passim*

Cal. Bus. & Prof. Code section 17200 ..................................................... 12

Cal. Bus. & Prof. Code section 17500 ..................................................... 12

California Penal Code § 496 .................................................................... 12

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ................................................. 1

Fiserv, Inc. "Fiserv Corporation." .......................................................... 1

Rule 9(b) .............................................................................................. 7, 8

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER
81360170.10

1   Pursuant to 28 U.S.C. section 1404(a) and Federal Rule of Civil Procedure
2   12(b)(6), Defendants Fiserv, Inc.[1] ("Fiserv") and CardConnect, LLC[2]
3   ("CardConnect") (collectively "Defendants") hereby file this memorandum of law
4   in support of their Motion to Dismiss or, in the alternative, Transfer, respectfully
5   showing the Court as follows:

6   **I.    INTRODUCTION**

7   On, November 2, 2020, Plaintiff Chef Alessandro Pirozzi, Inc. d/b/a Alessa
8   ("Alessa") entered into a Merchant Processing Application and Agreement
9   ("MPAA") and its incorporated Program Guide (collectively, the "Agreement") with
10  CardConnect, which enabled Alessa to accept payment cards from its customers.
11  (*See* Decl. of B. Maravent, Ex. A, attached as **Exhibit A**; Compl. ¶¶ 8-9.)[3]

12  Thereafter, Plaintiffs filed suit against CardConnect and Fiserv (who is not a
13  party to the Agreement), alleging that beginning in August of 2021, Alessa was not
14  receiving deposits from its customers' card payments. (Compl. ¶ 12.) The Complaint
15  weaves a confusing tale involving secret codes and ex-military personnel. (*Id*. ¶¶ 22-
16  23.) But the truth is much simpler (and believable). No ex-military personnel
17  engaged in an elaborate scheme to defraud Alessa of its funds. Instead, Plaintiffs
18  failed to maintain and observe the proper security protocols required by the
19  Agreement. As a predictable result, and as CardConnect has explained to Pirozzi,
20  someone with access to Alessa's security protocol(s) changed the deposit account to
21  divert the funds elsewhere. (*Id.* ¶ 13 ("CARDCONNECT falsely represented that the
22  ALESSA account on file was incorrect, and had been changed, such that hundreds

---

[1] The Complaint incorrectly names Fiserv, Inc. "Fiserv Corporation." (Compl. ¶ 3.)
[2] The case caption incorrectly refers to CardConnect, LLC as "CardConnect, a California Corporation." (*See* Compl. p. 1.)
[3] Only Alessa's funds are at issue. (*See* Section II.C.) Regardless, Pirozzi Enterprises, LLC d/b/a Salerno ("Salerno") also entered into a nearly identical agreement on that same day. (*See* Salerno MPAA and Program Guide, attached as **Exhibit B**.)

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER
81360170.10

of thousands of dollars rightly belonging to Plaintiffs was placed into unknown accounts not belonging to Plaintiffs.").)

Critically, the Agreement requires Alessa to maintain the security of its systems. (Program Guide §§ 5 (providing Alessa is responsible for maintaining security of its devices and outlining security requirements including restricting employee access and ensuring unauthorized access); 23.6 (providing Defendants are not responsible for detecting errors in the Settlement Account number); 39.6 (providing Alessa is responsible for using "commercially reasonable efforts to maintain the security of [its] Systems").)

Notwithstanding Plaintiffs' contractual responsibility to protect itself against such (purported) fraud, Plaintiffs assert ten causes of action for a simple breach-of-contract case. In doing so, Plaintiffs conveniently neglected to attach the Agreement.[4] The reason is clear, as the Agreement: (1) provides that New York (not California) law governs the parties' relationship; (2) demonstrates Pirozzi, Salerno, and Fiserv are not proper parties to this lawsuit; (3) precludes Plaintiffs' non-contractual causes of action; (4) limits Plaintiffs' recovery (if any) to $50,000.00 (at most); and (5) provides New York is the exclusive forum to litigate this case. More importantly, the Agreement demonstrates Plaintiffs have no right of recovery because Plaintiff Alessa – not CardConnect – bore the obligation to safeguard its own passwords to ensure the very circumstances alleged here did not occur.

## II.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

To survive a motion to dismiss, a complaint must contain sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell v. Twombly*, 550 U.S. 554, 570 (2007). Plaintiff

---

[4] The Court may consider documents incorporated by reference to "prevent[ ] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

must include "more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678. A complaint that asserts "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor can a complaint survive if it is based upon "naked assertion[s] devoid of further factual enhancement." *Id.* at 557. Further, a court should not consider legal conclusions in determining whether the complaint has stated a claim for relief. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citations omitted).

Here, Plaintiffs allege ten causes of action for a simple breach-of-contract case. Yet even Plaintiffs' breach-of-contract claim fails as a matter of law. Accordingly, this case should be dismissed in its entirety.

## A.    New York Law Governs

The Agreement contains a New York choice-of-law clause: "Our Agreement shall be governed by and construed in accordance with the laws of the State of New York (without regards to its choice of law provisions)." (Program Guide § 44.1.) And California Courts will typically enforce such a clause. *Reddy v. Mediscribes, Inc.*, No. EDCV191677JGBSPX, 2020 WL 2220202, at *3 (C.D. Cal. Feb. 18, 2020) (explaining "California law 'reflects a strong public policy favoring enforcement of freely negotiated choice-of-law clauses'" and that "the party opposed to the enforcement of the choice-of-law clause bears the burden of establishing otherwise); *see also Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1167 (S.D. Cal. 2015) (same). This is true of both Plaintiffs' contract and tort claims. *See Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1153 (Cal. App. Ct. 1992) (holding choice-of-law clause applied to all causes of action arising from or related to the contract at issue). Therefore, New York law governs.

**B.     The Court Should Dismiss Plaintiffs' Claims Against Fiserv Because Fiserv Is Not a Party to the Agreement**

As explained in more detail below, each of Plaintiffs' claims arise out of the Agreement. And only a party to a contract may be sued for its breach. *See, e.g.*, *Marino v. Dwyer-Berry Constr. Corp.*, 193 A.D.2d 654, 655 (N.Y. App. Div. 1993) (dismissing complaint because plaintiff did not have a contractual relationship and was not in privity with the parties to the contract); *see also PFM Packaging Mach. Corp. v. ZMY Food Packing, Inc.*, 131 A.D.3d 1029 (N.Y. App. Div. 2015) (an essential element of any breach-of-contract claim is that a contract existed between the parties). Although the Complaint alleges Plaintiffs entered into a "contractual arrangement" with Fiserv and Card Connect (Compl. ¶ 8), the Agreement does not even mention Fiserv. (*See generally* MPAA & Program Guide.) And the remaining allegations are specific to CardConnect, not Fiserv. (*See, e.g.,* Compl. ¶¶ 13 ("Plaintiff . . . called CARDCONNECT management team . . . Plaintiff asked CARDCONNECT employees . . . ."); 25 ("Travis Bellet who represented that he was a 'Manager' of CARDCONNECT"); 26 ("Defendant's representative Bonnie Clark . . . ."). Accordingly, the Complaint should be dismissed as to Fiserv.

**C.     Neither Allessandro Pirozzi Nor Salerno Have Standing**

The entirety of this dispute surrounds Plaintiffs' allegation that Alessa's funds were not deposited into its account. (Compl. ¶ 12 ("On or about August 10. 2021, no credit card, California sales taxes and tips, was [sic] being deposited into the bank accounts . . . of *Plaintiff ALESSA*." (emphasis added); *see also id.* ¶ 13 ("These employees of CARDCONNECT falsely represented that the ALESSA account on file was incorrect.").) Further, Plaintiff Allessandro Pirozzi, individually, is not a party to any Agreement. (*See generally* Agreements.) Accordingly, the Court should dismiss Salerno and Pirozzi for lack of standing.

**D.     The Individual Claims Fail as a Matter of Law**

    **1.     Plaintiff Has Failed to Plead the Requisite Elements for Breach of Contract (Count II)**

Here, Plaintiffs' breach-of-contract claim must fail because Plaintiffs cannot prove performance or breach. *El-Nahal v. FA Mgmt., Inc.*, 5 N.Y.S.3d 201, 202 (2015) (explaining performance and breach are essential elements). As an initial matter, Plaintiffs do not attach the Agreement, let alone cite any specific provision they claim Defendants breached. At most, Count II alleges:

> As part of the terms of the business contract between Plaintiffs and Defendants, Defendants agreed to dutifully handle the point-of-sale transactions for Plaintiffs' businesses and transfer said receipts to the appropriate Bank of America accounts owned by Plaintiffs . . . .
>
> …
>
> On or about August 1, 2021, and continuing to the present day, Defendants FISERV and CARDCONNECT, breached the agreement/contract by failing to transfer receipts owed to Plaintiffs in a timely fashion or at all, to the Bank of America Accounts owned by Plaintiffs.

(Compl. ¶¶ 48, 50.) As the allegations throughout the Complaint illustrate, Plaintiffs' claims appear to stem from someone changing Plaintiff Alessa's deposit account information to steal amounts deposited. (Compl. ¶ 13 (alleging that the CardConnect employees told him "the ALESSA account on file was incorrect, and had been changed").) Accordingly, Plaintiffs complain Defendants represented they "would safely and securely maintain the point-of-sale technology used by Plaintiffs and safely and securely transfer the sales receipts of Plaintiffs' business to the correct, accurate, and appropriate Bank of America  accounts . . . ." (Compl. ¶ 40.)

Here, Plaintiffs' breach-of-contract claim must fail because the Agreement expressly requires *Plaintiffs* to secure their own account information:

> **Security of Information.** We will use commercially reasonable efforts to maintain the security of the Services and the Platform. You will use commercially reasonable efforts to maintain the security of Your Systems. Such steps by you will be taken at your sole cost and expense, and shall include, without limitation: (i) creating firewalls to protect

5

against unauthorized access to Your Systems by your employees, contractors, Customers, or by any other person; and (ii) implementing reasonable protective techniques suggested by us. You further agree that you will be bound by and comply with all of our and all Card Organization security rules and regulations as they now exist or as each may be amended or supplemented from time to time. Notwithstanding the foregoing, the parties recognize that there is no guarantee or absolute security of information that is communicated over the internet.

(Program Guide § 39.6; s*ee also id.* § 5.) It further warns:

You acknowledge and agree that transfers to and from the Settlement Account shall be based on the account number and routing number supplied by you. *We are not responsible for detecting errors in any Settlement Account information you provide*, including the account numbers and routing numbers, even if any of those numbers do not correspond to the actual account or financial institution identified by name.

(Program Guide § 23.6 (emphasis added).)

Accordingly, the Agreement makes clear the very contractual duty Plaintiffs allege Defendants breached was not Defendants' duty at all. Rather, the Agreement expressly provided *Plaintiffs* had an obligation to secure their own account information. Count II must therefore be dismissed.

### 2. The Majority of Plaintiffs' Remaining Claims Fail Because the Only Duties Involved Arise from the Agreement

Plaintiffs attempt to assert claims for fraud/intentional misrepresentation, breach of fiduciary duty, accounting, declaratory relief, conversion, negligence, and money had and received – all of which are improperly based on Plaintiffs' *contractual* relationship with CardConnect.

### i. Fraud/Intentional Misrepresentation (Count I)

Count I for fraud/intentional misrepresentation relies entirely on the terms of the Agreement:

Defendants by and through their agents and representatives and *in writing*, represented that Defendants would safely and securely maintain the point-of-sale technology used by Plaintiffs and safely and securely transfer the sales receipts of Plaintiffs' business to the correct, accurate, and appropriate Bank of America accounts . . . .

[And that] Defendants claimed they would *honor and abide by the terms of the contract with Plaintiffs* and by state and federal laws, but had no intention of doing so, or recklessly failed to do so.

(Compl. ¶¶ 40, 43 (emphasis added).) But it is a well-established that a "simple breach of contract is not a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190 (N.Y. 1987). And simply alleging a defendant did not intend to perform a contract generally fails to state a claim for fraud. *Hudson Bay Master Fund Ltd. v. Patriot Nat., Inc.*, 309 F. Supp. 3d 100, 114 (S.D.N.Y. 2018).

Here, Plaintiffs allege nothing more than representations of future intent to perform under the contract. (Compl. ¶ 43.) Such representations "express[] an intention to perform or suffer the ordinary contractual consequences for a breach," and therefore are only actionable (if meritorious, which they are not) under Plaintiffs' breach-of-contract claim. *See Hudson Bay*, 309 F. Supp. 3d at 114.

Further, Plaintiffs fail to allege damages separate and distinct from their breach-of-contract claim as required for an independent claim for fraud. (*Compare* Am. Compl. ¶¶ 46-51, *with* Compl. ¶¶ 39-45); *see Cho v. Kalliagas*, No. 04-CV-3371 (NGG) (SMG), 2008 WL 924750, at *6 (E.D.N.Y. Apr. 4, 2018) ("A plaintiff who asserts claims for both fraudulent inducement and breach of contract is required to allege damages distinct from contract damages in order to recover on his fraud claims."). Accordingly, the Court should dismiss Count I with prejudice. *See Torok v. Moore's Flatwork & Founds., LLC*, 106 A.3d 1421, 1422 (N.Y. App. Div. 2013) (dismissing claims for fraudulent misrepresentation as duplicative).[5]

---

[5] Morevoer, Plaintiffs have failed to plead this claim with the requisite particularity. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (Rule 9(b) applies to state-law fraud claims in a diversity action). Specifically, Plaintiffs must allege "the who, what, when, where, and how" and failure to do so results in the averment being "disregarded" or "stripped" from the claim. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Although paragraphs 7-38 allege numerous conversations between Plaintiffs and CardConnect employees, those conversations have nothing to do with the alleged misrepresentations outlined in Count I. (*Compare* Compl. ¶¶ 7-38 (alleging numerous conversations regarding the alleged deposit issue), *with* Compl. ¶ 43 (alleging that Defendants represented they "would honor and abide by the terms of the contract with Plaintiffs and by state and

### ii.  Breach of Fiduciary Duty (Count IV)

An alleged breach of fiduciary duty must be "independent of the contract itself." *Morgenroth v. Toll Bros.*, 876 N.Y.S.2d 378, 380 (N.Y. App. Div. 2009). The Complaint alleges "Defendants have committed multiple breaches of their fiduciary duties to Plaintiffs herein, including failure to transfer monies by way of point of sale receipts which rightly belong to Plaintiffs but which Defendants are refusing to transfer." (Compl. ¶ 58.) According to the Complaint, this duty is a *contractual* obligation:

> Defendant CARDCONNECT, by and through FISERV, provided the point-of-sale technology to Plaintiffs and was responsible, along with Defendant FISERV, for the accurate charging of clientele of Plaintiffs' establishments and for the accurate transfer of all credit point of sales to the bank accounts belonging to Plaintiffs, *as established in written contracts between the Parties.*

(Compl. ¶ 9 (emphasis added).) As such, Plaintiffs' breach of fiduciary duty claim is merely duplicative of their breach-of-contract claim and must be dismissed.

### iii.  Accounting (Count III)

The Court should dismiss Plaintiffs' accounting claim because: (1) the parties had a contractual, not fiduciary, relationship; (2) Plaintiff has an adequate remedy at law; and (3) Plaintiff never made a demand for an accounting.

First, "[t]he right to an accounting is premised upon the existence of a confidential or fiduciary relationship" and a breach of that duty. *Ctr. for Rehab. and Nursing at Birchwood, LLC v. S & L Birchwood, LLC*, 939 N.Y.S.2d 78 (N.Y. App. Div. 2012). As such, courts will dismiss an accounting claim when no fiduciary duty exists. *See id.; Elghanian v. Elghanian*, 717 N.Y.S.2d 54 (N.Y. App. Div. 2000); *Luong v. Ha The Luong*, 126 N.Y.S.3d 850 (N.Y. Sup. Ct. 2020) ("The first element of an accounting claim is the existence of a fiduciary relationship, the absence of

federal laws.").) Instead, Plaintiffs' fraud claim is outlined, entirely, in paragraphs 39-45, which make no mention of the who, when, where, or how as required by Rule 9(b). (Compl. ¶¶ 39-45.) Count I must therefore be dismissed.

8

which requires dismissal."). Here, as explained above, Plaintiffs have alleged no facts to support their allegation of a fiduciary relationship with Defendants. (*See supra* Section II.D.2.ii.) Rather, their only allegations sound in contract.

Further, an accounting claim requires there be "no adequate remedy at law." *Unitel Telecard Distrib. Corp. v. Nunez*, 936 N.Y.S.2d 17 (N.Y. App. Div. 2011). Here, there exists a valid and enforceable contract, and if Plaintiffs have any damages (they do not), those damages could be satisfied with monetary relief.

Finally, there is no evidence or allegation Plaintiffs made a demand for an accounting. Absent such a demand (and refusal), there exists no basis for an accounting claim. *McMahan & Co. v. Bass*, 673 N.Y.S.2d 19 (N.Y. App. Div. 1998).

### iv.  Declaratory Relief (Count V)

For their fifth cause of action, Plaintiffs seek: (1) an immediate accounting, (2) immediate transfer of the funds; and (3) a preliminary injunction "against Defendants' wrongful conduct as alleged herein." (Compl. ¶ 64.) This Count must be dismissed for two reasons. First, Plaintiffs' declaratory relief is merely a restatement of Count II (breach of contract) and Count III (accounting). It is well established, however, that a court "should not use a motion for a preliminary injunction as an opportunity to decide questions of contract breach or to grant relief properly awarded only in a final judgment." *Agrest v. International Safe Distributors*, Inc., No. 86 CIV. 0660 (JFK), 1986 WL 5109, at *7 (S.D.N.Y. Apr. 30, 1986); *see also Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC,* No. CV166370SJFAYS, 2017 WL 6729854, at *23 (E.D.N.Y. Oct. 31, 2017) (declaratory relief is "inappropriate where a party has already invoked its right to a coercive remedy."). "Thus, courts have deemed '[a] cause of action for a declaratory judgment [a]s unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract.'" *Zam & Zam Super Mkt., LLC.*, 2017 WL 6729854 at *23; *Ciambrone v Metro. Life Ins. Co.*, No. 657016/2017, 2019 WL 854597, at *2 (N.Y. Sup. Ct. Feb. 22, 2019) (same).

Second, preliminary injunctive relief, such as that requested in Count V, must be made in a separate motion and supported by evidence beyond "the unverified allegations of the pleadings." *Calloway v. Nieves*, No. 219CV01792KJMCKDP, 2021 WL 5893314, at *4 (E.D. Cal. Nov. 29, 2021); *BYD Co. Ltd v. Khazai*, No. CV205530DMGAGRX, 2020 WL 3893310, at *1 (C.D. Cal. July 10, 2020). Plaintiffs have failed to do so and, accordingly, Count V must be dismissed.

### v.   Conversion (Count VI)

It is well settled that a claimed contractual right of payment will not support a claim for conversion. *Schmidt v. Lorenzo*, 894 N.Y.S.2d 641, 642 (2010). Accordingly, a "conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations." *Command Cinema Corp. v. VCA Labs, Inc.,* 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006) (applying New York law.); *see also Rossetti v. Ambulatory Surgery Ctr. of Brooklyn, LLC*, 125 A.D.3d 548, 549 (1st Dep't 2015) (dismissing a conversion claim because it was based on the same allegations underlying the breach of contract claims). Yet, here, Plaintiffs' conversion claim is identical to their breach of contract claim. (*Compare* Compl. ¶ 66 ("Defendants . . . refused to transfer said receipts since August 1, 2021, and continuing into the appropriate Bank of America accounts of Plaintiffs") *with* Compl. ¶ 50 ("On or about August 1, 2021, and continuing to the present day, Defendants . . . fail[ed] to transfer receipts owed to Plaintiffs in a timely fashion or at all, to the Bank of America accounts owned by Plaintiffs.").) Because the conversion claim merely restates the breach-of-contract claim in a different form, the Court should dismiss it with prejudice.

### vi.   Negligence (Count VIII)

Plaintiffs' negligence claim fails for lack of duty. Plaintiffs claim: "Defendants breached the duty of care by failing to use the skill and care that reasonably careful *bankers* would have used in similar circumstances." (Compl. ¶ 83.) Neither Fiserv nor CardConnect is a bank. According to the Complaint, Fiserv

10

is a "global technology and payment servicing company" and CardConnect "provides electronic credit card point of sale infrastructure and financial technology for the transfer of sales from customer to proprietor." (Compl. ¶ 8.) Accordingly, Count VIII should be dismissed because Plaintiffs have failed to allege any duty applicable to Defendants to support Plaintiffs' claim. *See Jiminez v. Shahid,* 922 N.Y.S.2d 123, 124 (2011) (dismissing claim for negligence because the plaintiffs "failed to sufficiently allege any valid basis for the imposition of a duty of care on behalf of" the defendant").

Alternatively, Plaintiffs claims are barred by the economic loss doctrine. "There is a longstanding New York rule . . . that economic loss is not recoverable under a theory of negligence", absent the alleged negligence resulting in any personal injury or property damage. *Labajo v. Best Buy Stores,* 478 F. Supp. 2d 523, 532 (S.D.N.Y. 2007) (citations omitted); *Clark-Fitzpatrick, Inc. v. Long Island R. Co.,* 70 N.Y.2d 382, 389 (1987) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."). Here, Plaintiffs seek only alleged economic loss which is not the consequence of personal injury or property damage.

### vii.    Money Had and Received (Count IX)

Under New York law, an action for money had and received sounds in quasi contract "and arises when, *in the absence of an agreement*, one party possesses money that in equity and good conscience it ought not retain." *Marte v. Graber*, 924 N.Y.S.2d 720, 721 (App. Term 2011) (emphasis added). Here, the express agreement between the parties precludes Plaintiffs' claim for money had and received. *Id.* (holding "since there was an express agreement between the parties, plaintiff has failed to set forth a viable cause of action for money had and received.").

**3.     The Remaining Claims Should be Dismissed Because They Rely on Inapplicable California Law.**

**i.     California Unfair Competition (Count VII)**

Plaintiffs' cause of action under Cal. Bus. & Prof. Code section 17200 does not support a claim for relief. First, Plaintiffs' claims arise under New York (not California) law and therefore cannot proceed because the parties expressly agreed New York law would apply to Plaintiffs' claims arising out of the merchant processing relationship. (*See supra* Section II.A.) Second, Plaintiffs allege Defendants violated Cal. Bus. & Prof. Code section 17500, (Compl. ¶ 70), which governs false *advertising*. *See Alfasigma USA, Inc. v. First Databank, Inc.*, 525 F. Supp. 3d 1088, 1095 (N.D. Cal. 2021) (holding the plaintiff's false advertising claim failed because the defendant had not disseminated commercial speech). Unsurprisingly, these claims typically involve *e.g.* representations on product labels. *See, e.g., Nagel v. Twin Lab'ys, Inc.*, 109 Cal. App. 4th 39, 48 (2003) (case involving label's list of product ingredients). Accordingly, the statute is plainly inapplicable both because it sounds in California law and because the allegations in the Complaint are limited to one-on-one communications between Plaintiff Pirozzi and various CardConnect employees. (*See* Compl. ¶¶ 7-38.)

**ii.     California Penal Code § 496 (Count X)**

Count X alleges:

> On or about August 31, 2020, pursuant to CCP section 474, Bonham was named as DOE 3 defendant and service of the Summons and Complaint occurred on 11/4/2020.

(Compl. 92.) It is unclear who "Bonham" is, what "Summons and Complaint" Plaintiffs refer to, or what these allegations have to do with this case. And, in addition to again attempting to apply California law to claims that must be brought under New York law, Plaintiffs further cannot recover under California Penal Code section 496 because, as with Plaintiffs' tort causes of action, this claim is impermissibly duplicative of their breach-of-contract claim. (*Compare* Compl. ¶ 50

12

(alleging Defendants failed to transfer Plaintiffs' receipts), *with id.* ¶¶ 91, 93 (alleging Defendants wrongfully kept Plaintiffs' receipts).)

### E.   Plaintiffs' Damages Are Limited to, at Most, $50,000.00

The Court should dismiss this action in its entirety for the reasons discussed above. Should the Court not do so, at a minimum, the Court should significantly limit Plaintiffs' recoverable damages pursuant to the terms of the Agreement.

In addition to their alleged out-of-pocket loss of $302,601.64, Plaintiffs seek punitive damages and treble damages. (Compl. p. 16.) But the Agreement expressly provides that such damages are not recoverable:

> IN NO EVENT SHALL WE OR OUR AFFILIATES OR ANY OF OUR OR THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AGENTS OR SUBCONTRACTORS, BE LIABLE UNDER ANY THEORY OF TORT, CONTRACT, STRICT LIABILITY OR OTHER LEGAL THEORY FOR LOST PROFITS, LOST REVENUES, LOST BUSINESS OPPORTUNITIES, EXEMPLARY, PUNITIVE, SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES, EACH OF WHICH IS HEREBY EXCLUDED BY AGREEMENT OF THE PARTIES, REGARDLESS OF WHETHER SUCH DAMAGES WERE FORESEEABLE OR WHETHER ANY PARTY OR ANY ENTITY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(Program Guide § 27.3; *see also* Program Guide p. 3 ("**The Agreement limits our liability to you.** For a detailed description of the limitation of liability see Section 27, 37.3, and 39.10 of the Card General Terms" (emphasis in original)).) Under New York law, such limitation-of-liability provisions are valid and enforceable.  *See Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 436, 643 N.E.2d 504, 507 (1994) ("A limitation on liability provision in a contract represents the parties' Agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor.").

Likewise, Plaintiffs seek attorneys' fees. (Compl. p. 16.) But attorneys' fees are not recoverable unless provided for by statute or contract. *EVEMeta, LLC v. Siemens Convergence Creators Corp.*, 104 N.Y.S.3d 607, 610 (2019) (dismissing claim for attorneys' fees because "Plaintiff cites no statute or contract provision that

entitles it to attorneys' fees"). Here, Plaintiffs have failed to cite to any provision in the Agreement or any statute entitling them to attorneys' fees. (*See* Compl.)

In addition, Plaintiffs' claims must be dismissed to the extent they seek damages in excess of the lesser of $50,000.00 or twelve months' processing fees as limited by the terms of the Program Guide:

> NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY (INCLUDING BUT NOT LIMITED TO SECTIONS 33 or 28.5), OUR CUMULATIVE LIABILITY FOR ALL LOSSES, CLAIMS, SUITS, CONTROVERSIES, BREACHES OR DAMAGES FOR ANY CAUSE WHATSOEVER (INCLUDING, BUT NOT LIMITED TO, THOSE ARISING OUT OF OR RELATED TO THIS AGREEMENT), REGARDLESS OF THE FORM OF ACTION OR LEGAL THEORY, SHALL NOT EXCEED, (I) $50,000; OR (II) THE AMOUNT OF FEES RECEIVED BY US PURSUANT TO THIS AGREEMENT FOR SERVICES PERFORMED IN THE IMMEDIATELY PRECEDING 12 MONTHS, WHICHEVER IS LESS.

(Program Guide § 27.4.) As such, Plaintiffs' request for damages in excess of $300,000.00, plus legal fees, and punitive damages ignores the Agreement's express terms, which bar Plaintiffs from recovering damages in excess of the foregoing.

## III.   IF NOT DISMISSED IN ITS ENTIRETY, AND/OR IN THE ALTERNATIVE, THIS ACTION MUST BE TRANSFERRED TO EASTERN DISTRICT OF NEW YORK

The Agreement mandates Suffolk County, New York, as the proper—and *exclusive*—forum for any dispute arising out of this processing relationship:

> We have substantial facilities in the State of New York and many of the services provided under this Agreement are provided from these facilities. The exclusive venue for any actions or claims arising under or related to this Agreement shall be in the appropriate state or federal court located in Suffolk County, New York.

(Program Guide § 44.2.) Defendants therefore request the Court transfer this case to the Eastern District of New York.

### A.   Forum Selection Clauses Are Presumed Valid and Enforceable

28 U.S.C. § 1404(a) states that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to

14

any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In this instance, the parties have agreed to litigate Plaintiffs' claims in Suffolk County, New York.

The Supreme Court and Ninth Circuit have recognized that contractual forum selection clauses are presumptively valid and enforceable. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991); *M/S BREMEN v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972); *In re Becker*, 993 F.3d 731, 732 (9th Cir. 2021) ("Forum selection clauses are valid except in the rarest cases."). Federal courts in California, including this district, follow that rule. *Sarmiento v. BMG Ent.*, 326 F. Supp. 2d 1108, 1110 (C.D. Cal. 2003) ("Under federal law, a forum selection clause is prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."). The presumption of validity may only be overcome if the resisting party shows the clause is "unreasonable" under the circumstances. *Id.* And it is well-established that the party resisting enforcement of the forum selection clause bears a "heavy burden of proof." *Fireman's Fund Ins. v. M.V. DSR Atl.*, 131 F.3d 1336, 1338 (9th Cir. 1997).

**B.    The Agreement Specifies Suffolk County, New York, as the Proper Venue**

The Agreement expressly mandates "[t]he exclusive venue for any actions or claims arising under or related to this Agreement ***shall*** be in the appropriate state or federal court located in Suffolk County, New York." (Program Guide § 44.2 (emphasis added).) Thus, the provision is mandatory and not simply permissive.

**C.    Plaintiffs' Claims "Aris[e] Under" and/or "Relate[ ] to" the Agreement**

Plaintiffs' allegations and claims plainly "aris[e] under" and "relate to" the Agreement. Plaintiffs allege their claims are based upon the very processing relationship established and governed by the Agreement and specifically referenced the Agreement (despite not attaching it or citing any specific provisions thereof) as

15

the basis for its claims. (*See, e.g.* Compl. ¶ 9; *see supra* Section II.D.2.)[6]

### D.   Enforcement of the Forum Selection Clause is Reasonable

The forum selection clause contained in the Agreement must be enforced. Plaintiff Alessa contracted with CardConnect for the provision of payment card processing, ostensibly in furtherance of Plaintiff's business motivations. (*See, e.g.,* Compl. ¶ 9.) Included in that Agreement is a forum selection clause, which unequivocally requires any claim the contracting parties bring against one another to be brought in Suffolk County, New York. (Program Guide § 44.2.) Moreover, Suffolk County, New York is a logical forum for the litigation, as the Agreement also designates the law of New York to apply to any litigation between the contracting parties. (Program Guide § 44.1.) In short, the Plaintiffs' advance agreement to litigate disputes in New York is logical, reasonable, and enforceable.

As stated above, Plaintiffs have the burden of overcoming the prima facie validity of a forum selection clause and may only do so by showing the forum selection clause is unreasonable under the circumstances. *Sarmiento v. BMG Ent.*, 326 F. Supp. 2d 1108, 1110 (C.D. Cal. 2003). The Supreme Court and Ninth Circuit have restricted the definition of unreasonableness to include only three scenarios:

> (1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought.

*LaCross*, 95 F. Supp. 3d at 1203. Plaintiffs bear a "heavy burden of proof" under this test. *Fireman's Fund Ins.*, 131 F.3d at 1338.

Plaintiffs cannot show – and the facts refute – any finding of unreasonableness. While Plaintiffs may argue they were unaware of the forum

---

[6] Further, "forum selection clauses can be equally applicable to contractual and tort causes of action," depending on "whether resolution of the claims relates to interpretation of the contract." *Manetti-Farrow, Inc.*, 858 F. 2d at 514 (citations omitted). As explained in Section II, Plaintiffs' non-contractual claims stem from the Agreement.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER
81360170.10

1    selection clause, this Court has held that "[t]he opportunity to read a clearly

2    identified and intelligible forum selection clause before accepting the contract

3    provides sufficient notice to plaintiff." *Sarmiento*, 326 F. Supp. 2d at 1110.

4    Likewise, the Agreement expressly states that by signing Alessa "acknowledges

5    reading and agreeing to all terms in" Program Guide, which contains the forum

6    selection clause. (Program Guide p. 3.)

7         Moreover, to invalidate a forum selection clause for fraud, a party must show

8    the clause was the product of fraud or coercion. *Richards v. Lloyd's of London*, 135

9    F. 3d 1289, 1297 (9th Cir. 1998). "[S]imply alleging that one was duped into signing

10   the contract is not enough." *Id.* (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506,

11   519 n.14 (1974)).[7] In addition to allegations of fraud specific to the clause itself,

12   evidence of that conduct is required. *See LP Digit. Sols. v. Signifi Sols., Inc.*, 921 F.

13   Supp. 2d 997, 1008 (C.D. Cal. 2013) (holding plaintiff did not show forum selection

14   clause was unreasonable when plaintiff offered "no evidence that such a clause is a

15   product of fraud or overreaching").

16        Plaintiff is similarly unable to show how enforcement of the forum selection

17   clause would cause it "grave inconvenience or unfairness." Suffolk County, New

18   York is not remote, inconvenient, or unfair. *See, e.g., Lewis v. Liberty Mut. Ins. Co.*,

19   953 F.3d 1160, 1168-70 (9th Cir. 2020 (enforcing commercial forum selection

20   clause requiring litigation in Australia rather than California); *Signifi Sols., Inc.*, 921

21   F. Supp. 2d at 1008 (enforcing commercial selection clause requiring litigation in

22   Canada rather than California). Neither the designated venue nor the chosen law is

23   so inconvenient or hostile to Plaintiffs' claims that Plaintiffs will be deprived of a

24

25   [7] Similarly, inclusion of a forum selection clause in form contracts, adhesion

26   contracts, or even unsigned forms is insufficient to rebut the presumption of
     enforceability. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1028 (9th Cir. 2016)

27   ("A forum selection clause within an adhesion contract will be enforced as long as
     the clause provided adequate notice to the [party] that he was agreeing to the

28   jurisdiction cited in the contract.").

17

1  remedy (or their "day in court") if the forum selection clause is enforced.

2        Finally, enforcement of the forum selection clause will not contravene the

3  public policy of California, much less a "strong public policy." California does not

4  have a strong public policy against contractual forum selection. Rather, California

5  courts regularly enforce them. *See Cal-State Bus. Prods. & Servs., Inc. v. Ricoh*, 12

6  Cal. App. 4th 1666, 1679 ("No satisfying reason of public policy has been suggested

7  why enforcement should be denied a forum selection clause appearing in a contract

8  entered into *freely* and *voluntarily* by parties who have negotiated *at arms' length*.").

9  And courts in this district specifically have rejected the attempted argument that

10  California has a public policy against enforcement of forum selection clauses. *See,*

11  *e.g.*, *LaCross*, 95 F. Supp. 3d at 1205 (finding a forum selection clause does not

12  violate California public policy "absent a total foreclosure of remedy in the

13  transferee forum").

14        **E.     Public Interest Factors Weigh in Favor of Transfer**

15        In analyzing a motion to transfer under Section 1404(a), Courts consider the

16  following public interest factors: "(1) plaintiff's choice of forum; (2) the

17  convenience of the parties; (3) the convenience of the witnesses; (4) the location of

18  books and records; (5) which forum's law applies; (6) the interests of justice; and

19  (7) administrative considerations." *Zaklit v. Glob. Linguist Sols., LLC*, No.

20  CV1308654MMMMANX, 2014 WL 12521725, at *7 (C.D. Cal. Mar. 24, 2014).

21  "But a forum-selection clause changes the court's analysis because 'when the parties

22  have agreed to a valid forum-selection clause, a district court should ordinarily

23  transfer the case to the forum specified in that clause.'" *Cleanview Dist. Grp. LLC*

24  *v. LGL Holdings, LLC*, 2021 WL 5969502 at *2 (C.D. Cal. Nov. 12, 2021) (quoting

25  *Atl. Marine*, 571 U.S. at 62). Accordingly, the Court need not consider: (1) the

26  plaintiff's choice of forum; (2) arguments about the parties' private interests; or (3)

27  the original venue's choice-of-law rules. *Id.* "The practical effect of these

28  adjustments is that '[o]nly under extraordinary circumstances unrelated to the

18

convenience of the parties should a § 1404(a) motion be denied.'" *Id.* at *3.

Here, the applicable public-interest factors favor transfer. First, Plaintiffs' claims are governed by New York law. *Id.* (noting that the applicable law weighs "in favor of transferring the case to the forum that is 'at home with the law'" (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981))). Second, Plaintiffs agreed to litigate any disputes in New York, and it would be unjust to allow Plaintiffs to ignore that contractual agreement. Finally, while Plaintiffs may argue their alleged harm was suffered in California, "this is a private dispute between sophisticated parties that agreed to litigate their disputes in" New York and "[t]here is no public interest at stake that would override the right of private parties to freely enter into contracts on lawful terms that include a selected forum for dispute resolution." *Id.* The public interest factors clearly weigh in favor of transfer.

### F.    Fiserv Can Also Enforce the Forum-Selection Clause

The Ninth Circuit has held that forum selection clauses can benefit both "parties and non-parties" to a contractual relationship if the "alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants." *Manetti-Farrow, Inc.*, 858 F. 2d at 514 n.5. Although Fiserv is not a party to the Agreement (and should be dismissed from this action as demonstrated above), it may enforce the forum selection clause because it is "closely related" to CardConnect. *Id.* CardConnect is an indirect subsidiary of Fiserv. (Decl. of B. Maravent ¶ 2.) Fiserv is sufficiently related to CardConnect such that it was foreseeable to Plaintiffs at the time of contracting that any claims against Fiserv arising under the Agreement would be litigated in the chosen forum. Further, to the extent the Complaint alleges any conduct on behalf of Fiserv, that conduct necessarily is closely related to the Agreement.

## IV.    CONCLUSION

Defendants respectfully request the Court dismiss Plaintiffs' Complaint in its entirety or, in the alternative, limit Plaintiffs' damages pursuant to the Agreement

1    and/or transfer this case to the Eastern District of New York.

2

3    Dated:  January 5, 2022                         POLSINELLI LLP

4

5                                                  By:  */s/ John W. Peterson*

6                                                       John W. Peterson

7                                                       Attorneys for Defendants Fiserv, Inc. and
                                                        CardConnect, LLC
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER
81360170.10

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 5, 2022, a copy of the foregoing document was served via the Court's Electronic Filing System pursuant to Local Rule 5-3.2.1 and via U.S. Mail as follows:

Law Offices of Foroozandeh, APC
Majid Foroozandeh, Esq.
23461 So. Point Dr., Suite 385
Laguna Hills, CA 92653

/s/ *John W. Peterson*
John W. Peterson

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER
81360170.10