POLSINELLI LLP
JOHN W. PETERSON (SBN: 179343)
john.peterson@polsinelli.com
401 Commerce Street, Suite 900
Nashville, TN 37219
Telephone: (615) 259-1510
Facsimile: (615) 259-1573

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALESSANDRO PIROZZI; PIROZZI ENTERPRISES, LLC, dba SALERNO; CHEF ALESSANDRO PIROZZI, INC., dba ALESSA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>FISERV CORPORATION; CARDCONNECT; and DOES 1 through 25,<br><br>　　　　　　Defendants. | Case No. 8:21-cv-02130-CJC-ADS<br><br>DEFENDANTS FISERV, INC.'S AND CARDCONNECT, LLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER<br><br>Date:　　February 28, 2022<br><br>Time:　　1:30 p.m.<br><br>Place:　　Courtroom 9B<br><br>Judge:　　Hon. Cormac J. Carney |

81958726.8

# TABLE OF CONTENTS

I. DEFENDANTS PROPERLY CONFERRED WITH PLAINTIFFS' COUNSEL PRIOR TO FILING THE MOTION. ................... 1

II. THE COURT SHOULD GRANT DEFENDANTS' MOTION TO DISMISS. ................................................................................................ 4

    A. The Individual Claims Fail as a Matter of Law. .......................... 4

        1. Breach of Contract (Count II) ............................................. 4

        2. Fraud/Intentional Misrepresentation (Count I) ................. 5

        3. Breach of Fiduciary Duty (Count IV) ................................ 6

        4. Accounting (Count III) ....................................................... 6

        5. Declaratory Relief (Count V) ............................................ 6

        6. Conversion (Count VI) ...................................................... 6

        7. Negligence (Count VIII) .................................................... 7

        8. Money Had and Received (Count IX) .............................. 8

        9. California Unfair Competition (Count VII) & California Penal Code § 496 (Count X) ............................................. 8

    B. The Court Should Dismiss Plaintiffs' Claims Against Fiserv. ..... 9

    C. Neither Allessandro Pirozzi Nor Salerno Have Standing .......... 10

    D. Plaintiffs' Damages Are Limited to, at Most, $50,000.00 ........ 10

III. IF NOT DISMISSED IN ITS ENTIRETY, THIS ACTION MUST BE TRANSFERRED TO EASTERN DISTRICT OF NEW YORK. ........ 12

IV. CONCLUSION ................................................................................... 13

81958726.8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 6

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
    571 U.S. 49 (2013) .................................................................................................. 12

*CarMax Auto Superstores Cal. LLC v. Hernandez*,
    94 F. Supp. 3d 1078 (C.D. Cal. 2015) ...................................................................... 3

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
    516 N.E.2d 190 (N.Y. 1987) ..................................................................................... 7

*Coldwell Banker Real Est. LLC v. New All. Properties, Inc.*,
    2017 WL 5635023 (C.D. Cal. June 15, 2017) .......................................................... 8

*Cont'l Airlines, Inc. v. Mundo Travel Corp.*,
    412 F. Supp. 2d 1059 (E.D. Cal. 2006) ..................................................................... 9

*Ctr. for Rehab. and Nursing at Birchwood, LLC v. S & L Birchwood, LLC*,
    939 N.Y.S.2d 78 (N.Y. App. Div. 2012) ................................................................... 6

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*,
    309 F. Supp. 3d 100 (S.D.N.Y. 2018) ....................................................................... 5

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ..................................................................................... 5

*Manetti-Farrow, Inc. v. Gucci Am. Inc.*,
    858 F.2d 509 (9th Cir. 1988) ................................................................................... 12

*Medimatch, Inc. v. Lucent Techs., Inc.*,
    120 F. Supp. 2d 842 (N.D. Cal. 2000) ...................................................................... 9

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
    683 F.3d 239 (6th Cir. 2012) ..................................................................................... 5

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ..................................................................................... 9

81958726.8

*Star Direct Telecom, Inc. v. Glob. Crossing Bandwith, Inc.*,
    2012 WL 1067664 (W.D.N.Y. Mar. 22, 2012) ........................................................ 11

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................................... 5

**Statutes**

California Penal Code § 496 ........................................................................................ 8

**Other Authorities**

Local Rule 7-3 ..................................................................................................... 1, 3, 4

Fed. R. Civ. P. 9(b) ..................................................................................................... 5

Fed. R. Civ. P. 12(b)(3) ............................................................................................. 12

Fed. R. Civ. P. 81 ........................................................................................................ 1

81958726.8

On January 5, 2022, Defendants Fiserv, Inc.[1] ("Fiserv") and CardConnect, LLC[2] ("CardConnect") (collectively "Defendants") filed their Motion to Dismiss or, in the alternative, to Transfer ("Motion"). (ECF No. 9.) On February 4, 2022, Plaintiffs Alessandro Pirozzi ("Pirozzi"), Pirozzi Enterprises, LLC d/b/a Salerno ("Salerno"), and Chef Alessandro Pirozzi, Inc. d/b/a Alessa ("Alessa") (collectively "Plaintiffs") filed their Memorandum of Points and Authorities in Opposition ("Opposition"). (ECF No. 12.) Plaintiffs' Opposition brazenly and falsely claims no meet-and-confer occurred prior to filing the Motion, fails to cite applicable supporting authority, and like their Complaint, fails to identify properly pled factual allegations defeating dismissal. Accordingly, the Court should dismiss Plaintiffs' claims in their entirety or transfer this case to the Eastern District of New York.

### I. DEFENDANTS PROPERLY CONFERRED WITH PLAINTIFFS' COUNSEL PRIOR TO FILING THE MOTION.

While Plaintiffs accuse Defendants of "sleight of hand," disingenuousness, making false claims, and attempting to mislead the Court (Opp'n at 7, 10, 11, 17), Plaintiffs and their counsel have filed a declaration and made representations to the Court that are patently false in an effort to avoid dismissal of Plaintiffs' claims.

Defendants filed their Notice of Removal on December 29, 2021 (ECF No. 1), triggering Rule 81(c)(2), which required Defendants to answer or move to dismiss within seven days. Fed. R. Civ. P. 81(c)(2). Rule 81, when read with Local Rule 7-3, would have required Defendants to meet and confer regarding the Motion on the first day they subjected themselves to this Court's jurisdiction. Due to the Rule 81 deadline, holidays, and complications from the surge in COVID-19 cases, the meet and confer occurred on January 4, 2022. (Mot. at 2, ECF No. 9.)

Counsel had two calls on January 4, 2022 regarding this case and the Motion. (Decl. of Catherine Green at ¶ 3, attached as **Exhibit A**.) The first call lasted

---

[1] The Complaint incorrectly names Fiserv, Inc. "Fiserv Corporation." (Compl. ¶ 3.)
[2] The case caption incorrectly refers to CardConnect, LLC as "CardConnect, a California Corporation." (*See* Compl. p. 1.)

1

81958726.8

approximately 20 minutes, during which Defendants' counsel specifically advised she was calling to meet and confer under the local rules and informed Plaintiffs' counsel of Defendants' intent to file and bases for a motion to: (1) to dismiss the non-contract claims as duplicative of the breach of contract; (2) to dismiss the breach of contract claim due to the language in the Agreement; and (3) to transfer to the Eastern District of New York due to the Agreement's forum selection clause. (*Id.* ¶ 4.) Plaintiffs' counsel was extremely agreeable and pleasant and advised that he would contact his client to see if he would consent to transfer of this action to New York. (*Id.*) Plaintiffs' counsel also told Defendants' counsel to file the Motion if she did not hear from him. (*Id.*)

The second call lasted approximately 5 minutes. (*Id.* ¶ 5.) On the second call, Defendants' counsel advised Plaintiffs' counsel she intended to advise the Court that the parties were still working in good faith to limit the issues in this case. (*Id.*; *see also* Mot. at 2 ("Counsel continues to confer in good faith to limit the issues in this case and will update the Court if any agreement is reached.").)[3] Defendants' counsel did not object to this language and expressed no concern over the bases of the forthcoming Motion. (*Id.* ¶ 5.) Relying on Plaintiffs' counsel's statements and conduct, Defendants did not seek an extension and instead filed the Motion.

On February 4, 2022, Plaintiffs filed their Opposition, which shockingly contains blatant misrepresentations about counsel's prior discussions. The Opposition claims "Defendants' attorney failed to meet and confer with Plaintiffs' counsel at any time prior to filing." (Opp'n at 7.) The Opposition also falsely represents "there was no meet and confer regarding any forum selection clause or transfer motion prior to the filing of the MTD." (Opp'n at 21.) In fact, the Opposition makes no mention of the January 4th calls. Instead, Plaintiffs intentionally bury this fact in an exhibit. (*See generally* Opp'n; *see also* Decl. of M. Foroozandeh at ¶ 1,

---

[3] Keeping with that statement, Defendants' counsel organized another call with Plaintiffs' counsel on January 24, 2022, where the parties agreed to exchange certain information.

2

81958726.8

ECF No. 12-1.) In the exhibit, Plaintiffs' counsel declares, under penalty of perjury, that he "was not provided the grounds [for the Motion] or offered the opportunity to engage opposing counsel regarding resolution of any of their concerns." (Decl. of M. Foroozandeh at ¶ 1.) These statements are patently false.

The purpose of Local Rule 7-3 is to enable the parties to "determine whether it is possible to come to an agreement that obviates the need for the motion." *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015). Here, Defendants' counsel specifically explained to Plaintiffs' counsel Defendants intended to file a motion to: (1) to dismiss the non-contract claims as duplicative of the breach of contract; (2) to dismiss the breach of contract claim *due to the language in the Agreement*; and (3) to transfer to the Eastern District of New York *due to the Agreement's forum selection clause*. Moreover, Plaintiffs' counsel had the opportunity to but did not object to the timing of the conferral. Quite the opposite, Plaintiffs' counsel was rather agreeable and advised Defendants to file their Motion if they did not hear back from him regarding transfer. Clearly no further conferral would have been productive as Plaintiffs have elected to oppose each argument presented. (Opp'n at 8 ("Plaintiffs maintain that the arguments set forth in this Opposition warrant denial of Defendants' dismissal, and transfer request.").)

Further, the timing of the conferral should be excused. "Failure to comply with the Local Rules does not automatically require the denial of a party's motion, however, particularly where the non-moving party has suffered no apparent prejudice as a result of the failure to comply." *CarMax Auto Superstores Cal. LLC*, 94 F. Supp. 3d at 1088 (citing *ECASH Techs., Inc. v. Guagliardo,* 35 F. App'x 498, 500 (9th Cir. May 13, 2002; *Brodie v. Bd. of Trustees of Cal. State Univ.,* No. CV 12–07690 DDP (AGRx), 2013 WL 4536242, *1 (C.D. Cal. Aug. 27, 2013); *Williams–Ilunga v. Gonzalez,* No. CV 12–08592 DDP (AJWx), 2013 WL 571795, *4 (C.D. Cal. Feb. 13, 2013); *Reed v. Sandstone Props., L.P.,* No. CV 12005021 MMM (VBKx), 2013 WL 1344912, *6 (C.D. Cal. Apr. 2, 2013)). Plaintiffs have suffered no prejudice due

3

to the timing. In fact, despite their counsel's representations during the January 4th calls, Plaintiffs have weaponized Rule 7-3 to avoid dismissal of their claims. Such gamesmanship, especially considering Plaintiffs' misrepresentations to the Court, should not be rewarded.

## II. THE COURT SHOULD GRANT DEFENDANTS' MOTION TO DISMISS.

### A. The Individual Claims Fail as a Matter of Law.

#### 1. Breach of Contract (Count II)

Defendants' Motion to Dismiss explains that Plaintiffs' breach-of-contract claim must fail because Plaintiffs do not identify any provision of the Agreement they claim Defendants breached (nor can they) and the terms of the Agreement require Plaintiffs, not CardConnect, to protect their information and ensure the proper account information was provided. (Mot. at 5-6.) In response, Plaintiffs argue it is premature to "enforce any provisions contained" in the Agreement because it is "unsigned." (Opp'n at 15.) Again, Plaintiffs' statement is patently false. The Complaint alleges Plaintiffs entered into an Agreement for processing services in 2020 and asserts a claim for Defendants' alleged breach of this Agreement. (Compl. ¶¶ 8, 11, 46-51.) These allegations assume (rightly) the Agreement is valid and enforceable, and Plaintiffs specifically state "[t]he promises Defendants made in writing and orally constitute a contract between the parties." (*Id.* ¶ 46.)

Critically, Plaintiffs do not contend in their Opposition that the Agreement attached to Defendants' Motion to Dismiss differs from the contract referenced in the Complaint or is not the operative contract between the parties, nor could they, as it is the only contract that could relate the allegations in the Complaint. And Plaintiffs' apparent argument that the Agreement is not admissible because it does not contain an ink signature is disingenuous, as the Agreement was signed via DocuSign. (*See* Decl. of John Bintner, attached as **Exhibit B**.) Because Plaintiffs admit a valid Agreement exists, the Agreement Defendants attached to their Motion to Dismiss is

4

81958726.8

the only contract that could relate to Plaintiffs' claims, and Plaintiffs in fact did sign the Agreement via DocuSign, the Court should take judicial notice of the terms of the Agreement for purposes of resolving this Motion. The Court should not allow Plaintiffs to benefit from their strategic decision not to attach the Agreement upon which their very claims are based. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (The Court may consider documents incorporated by reference to "prevent[ ] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken— or doom—their claims.").

### 2. Fraud/Intentional Misrepresentation (Count I)

Plaintiffs argue that their fraud claims should not be dismissed because they incorporated the allegations from Paragraphs 7-38. (Opp'n at 13.) Plaintiffs contend "Paragraph 40 refers to a 'writing' and also actions of Defendants' 'agents and representatives' claiming they would place funds into the appropriate Bank of America accounts of Plaintiffs *but did not do as promised*." (Opp'n at 13 (emphasis added).) But this misses the point. Defendants had no obligation to fund Plaintiffs' accounts, and had no other relationship with Plaintiffs, absent the Agreement. Accordingly, Count I alleges nothing more than representations of future intent to perform under the Agreement and such claims must be brought as a breach of contract. *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 309 F. Supp. 3d 100, 114 (S.D.N.Y. 2018).[4]

Further, Plaintiffs fail to allege damages *separate and distinct* from their breach-of-contract claim. Plaintiffs claim the damages alleged in Paragraph 38 are

---

[4] New York law governs the substantive issues in this case. (*See* Mot. II.A.) Plaintiffs provide no argument to the contrary. (*See generally* Opp'n.) Instead, Plaintiffs summarily state "it is a matter of California law whether or not the claim sounds in fraud as pleaded and Federal courts must defer thereto." (Opp'n at 13.) In support, Plaintiffs cite two opinions. (*Id.*) Those opinions do not address whether a choice-of-law clause governs tort causes of action. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (finding that Rule 9(b)'s heightened pleading standard applies to negligent-misrepresentation claims); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (explaining Rule 9(b) applies to state-law causes of action but the "elements of fraud" come from state law).

5

81958726.8

fraud rather than contract damages (Opp'n at 14), but this paragraph is expressly incorporated into the breach-of-contract claim. (Compl. ¶ 46 ("Plaintiffs hereby incorporate paragraphs 1 through 44 as though fully set forth herein.").) Accordingly, by Plaintiffs' own admission, the breach-of-contract claim seeks the same damages as the fraud claim. Count I therefore must be dismissed.

### 3. Breach of Fiduciary Duty (Count IV)

Plaintiffs' fiduciary duty claim is impermissibly duplicative of the obligations under the Agreement. (Mot. at 8.) The Opposition totally fails to address this. (*See generally* Opp'n.) Instead, Plaintiffs merely argue "the Complaint alleges a fiduciary relationship between Plaintiffs and Defendants, and the breach thereof." (Opp'n at 16.) This legal conclusion is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court should therefore dismiss Count IV.

### 4. Accounting (Count III)

The Court should dismiss Count III because, as explained in the previous section, Plaintiffs have totally failed to (and cannot) plead the existence of a fiduciary relationship justifying any accounting. *Ctr. for Rehab. and Nursing at Birchwood, LLC v. S & L Birchwood, LLC*, 939 N.Y.S.2d 78 (N.Y. App. Div. 2012) (noting "[t]he right to an accounting is premised upon the existence of a confidential or fiduciary relationship" and a breach of that duty).

### 5. Declaratory Relief (Count V)

Although Plaintiffs generally contend Defendants' Motion to Dismiss should be denied (Opp'n at 8), the Opposition omits any argument or response related to Count V. (*See generally* Opp'n; *see also* Mot. at 9-10 (demonstrating any declaratory relief claims is improper.) Accordingly, Count V must be dismissed.

### 6. Conversion (Count VI)

The Opposition provides no legal authority for why Plaintiffs' conversion

6

81958726.8

claim should survive. (*See* Opp'n at 17.) Instead, Plaintiffs accuse Defendants of attempting "to mislead the Court" by including an ellipsis in a parenthetical quote. (*Id.* at 17; Mot. at 10.) But the omitted language does not impact Defendants' argument that "Plaintiffs' conversion claim is identical to their breach of contract claim." (Mot. at 10.) Paragraphs 66 (conversion) and 50 (breach of contract) of Complaint illustrate how these claims are duplicative:

> 66. Plaintiffs claim that Defendants wrongfully exercised control over their financial personal property in excess of $700,000, and refused to transfer said receipts since August 1, 2021, and continuing into the appropriate Bank of America accounts of Plaintiffs PIROZZI ENTERPRISES, LLC and CHEF ALLESANDRO PIROZZI, INC.

> 50. On or about August 1, 2021, and continuing to the present day, Defendants FISERV and CARDCONNECT, breached the agreement/contract by failing to transfer receipts owed to Plaintiffs in a timely fashion or at all, to the Bank of America accounts owned by Plaintiffs.

(Compl. ¶¶ 66, 50.) Clearly, both seek to state a cause of action due to Defendants' alleged failure to transfer receipts, which duty could only arise under the Agreement. Accordingly, the conversion claim is merely a restatement of the breach-of-contract claim and should be dismissed.

### 7. Negligence (Count VIII)

Once again, Plaintiffs fail to cite any legal authority in their Opposition supporting their negligence claim. (Opp'n at 17-18.) Instead, Plaintiffs summarily conclude the appropriate duty will be "born out in discovery" and that any defect "is curable via amendment." (*Id.* at 18.) Plaintiffs ignore any duty between these parties must necessarily arise out of the Agreement (and that is the only basis for their relationship), and therefore (like the other tort claims Plaintiffs assert) the negligence claim must be dismissed as duplicative of the breach-of-contract claim. *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190 (N.Y. 1987) (a "simple breach of contract is not a tort unless a legal duty independent of the contract itself has been

81958726.8

violated."). Even absent this independent reason for dismissal, however, Plaintiffs completely fail to counter that the economic loss doctrine requires dismissal of this claim. (*Compare id.* at 17-18 *with* Mot. at 11.) Accordingly, Count VIII should be dismissed.

### 8. Money Had and Received (Count IX)

The existence of an express agreement precludes a claim for money had and received. (Mot. at 11.) In response, Plaintiffs argue this principle is "an obscure New York law that is not binding on this Court." (Opp'n at 18.) It then confusingly proceeds to cite the very law it claims is not binding. (*Id.* at 18-19 (citing *Melcher v. Apollo Med. Fund Mgmt. L.L.C.*, 959 N.Y.S.2d 133 (2013) ("A cause of action for money had and received is one of quasi-contract and '[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter'" (internal citations omitted)).)

Regardless, this principle is not "obscure" and, even if California law governed (it does not), the same principle applies. *See Coldwell Banker Real Est. LLC v. New All. Properties, Inc.*, No. CV1701505BROSKX, 2017 WL 5635023, at *4 (C.D. Cal. June 15, 2017) (granting a motion to dismiss a counterclaim for money had and received). In fact, the court in *Coldwell Banker* explained a claim for money had and received "creates an obligation in the *absence of any agreement*, and a claim does not lie when an express agreement exists defining the rights of the parties." *Id.* That court dismissed the counterclaim for money had and received because it arose "from the same facts as the[] breach of contract claim." *Id.* The same is true here, and Count IX should therefore be dismissed.

### 9. California Unfair Competition (Count VII) & California Penal Code § 496 (Count X)

Plaintiffs fail to address or provide authority why California statutes should apply to parties who have contracted for New York law to govern, likely because

8

courts regularly dismiss claims arising under the laws of a different state than the parties agreed would govern their relationship. *See Cont'l Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1070 (E.D. Cal. 2006) (internal citation omitted) (dismissing California Unfair Competition claim in light of Virginia choice-of-law provision and explaining, "A valid choice-of-law provision selecting another state's law is grounds to dismiss a claim under California's UCL."); *see also Medimatch, Inc. v. Lucent Techs., Inc.,* 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000) (agreement that "construction, interpretation and performance of this Agreement shall be governed by the local laws of the State of New Jersey" required dismissal of California UCL claims). Accordingly, the Court should dismiss Counts VII and X.[5]

**B.     The Court Should Dismiss Plaintiffs' Claims Against Fiserv.**

Plaintiffs argue Fiserv – who is not a party to the Agreement – is nonetheless a proper party because it was the "primary point of contact prior to filing the Complaint" and "discovery where [sic] bear out its involvement and culpability." (Opp'n at 16.) Whether Fiserv personnel were involved in pre-litigation discussions is irrelevant because Fiserv is not a party to the Agreement. (*See generally* MPAA & Program Guide.) Further, aside from incorrectly claiming Fiserv is a party to the Agreement (Compl. ¶ 8),[6] the Complaint alleges actions by *CardConnect* – not Fiserv – employees, and the Complaint[7] contains no factual allegations[8] that would tie those employees' conduct to Fiserv. (*See, e.g.,* Compl. ¶¶ 23 (alleging the "management team" referenced throughout consisted of "Bonnie Clark, Travis Bellet, Delva [and]

---

[5] The Court should also dismiss Count VII and X because CardConnect was merely acting pursuant to the terms of the Agreement, making these claims impermissibly duplicative of the breach-of-contract claim. (See Mot. Section.II.D.1.)

[6] The Court need not accept this allegation as true because it is contradicted by the Agreement, of which the Court may take judicial notice. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit").

[7] The Opposition tries to connect Fiserv by attaching a statement from CardConnect's website. (Opp'n at 16.) This is not contained in the Complaint and should therefore be disregarded.

[8] Instead, the Complaint contains conclusory language. For example, Paragraph 15 states "On behalf of CARDCONNECT and FISERV," but cites to actions allegedly taken by CardConnect employees. (Compl. ¶ 15.)

9

Heather"); 21 (alleging Delva and Heather were CardConnect employees); 25 ("Travis Bellet who represented that he was a 'Manager' of CARDCONNECT"); 26 ("Defendant's representative Bonnie Clark . . . ."); *see also* Compl. ¶¶ 13 (alleging Plaintiff "called CARDCONNECT management team"); 13 (alleging "Plaintiff asked CARDCONNECT employees"); 23 ("Defendant CARDCONNECT's management team further instructed").) Fiserv should therefore be dismissed from this litigation.

### C. Neither Allessandro Pirozzi Nor Salerno Have Standing

Plaintiffs contend the Complaint alleges "money owed to Salerno" was not placed in Salerno's accounts. (Opp'n at 12.) But the Complaint is not this clear. Instead, the Complaint contains allegations that *Alessa*'s money was not being deposited into its account. (Compl. ¶ 12 ("On or about August 10. 2021, no credit card, California sales taxes and tips, was [sic] being deposited into the bank accounts of was not being deposited in the bank account [sic] of *Plaintiff ALESSA*." (emphasis added); *see also id.* ¶ 13 ("These employees of CARDCONNECT falsely represented that the ALESSA account on file was incorrect.").) Regardless, Salerno's claims fail for the same reasons as Alessa's; Salerno entered into a substantively identical agreement. (Mot. Ex. B.)

Plaintiffs also claim Pirozzi has standing because: (1) allegedly false representations were made to him; and (2) Pirozzi had to "use credit cards and seek out loans so that he could keep Alessa and Salerno running." (Opp'n at 12.) But Plaintiffs admit the allegedly improperly withheld funds did not belong to Pirozzi. (Opp'n at 12 (claiming Pirozzi relied on statements "which resulted in money owed to Salerno no longer being placed into Salerno's or Alessa's accounts.").) As such, Pirozzi does not have standing.

### D. Plaintiffs' Damages Are Limited to, at Most, $50,000.00

The Agreement limits Plaintiffs' damages (if any) to $50,000. Plaintiffs argue in response "[t]he restriction is not contained in the Agreement, was not bargained

for, and would not restrict recovery on a fraud claim since fraud was not contemplated by any agreement off the parties." (Opp'n at 11.) These arguments obviously lack merit because: (1) the limitation is conspicuously contained in the Agreement (Program Guide § 27.4); (2) the Confirmation Page, which Pirozzi signed, clearly warns "**The Agreement limits our liability to you.** For a detailed description of the limitation of liability see Section 27, 37.3, and 39.10 of the Card General Terms." (Program Guide p. 3 (emphasis in original)); and (3) the provision expressly covers fraud "OUR CUMULATIVE LIABILITY FOR ALL LOSSES . . . . REGARDLESS OF THE FORM OF ACTION OR LEGAL THEORY . . . ." (Program Guide § 27.4.).

Further, Plaintiffs argue enforcement of the provision would be "absurd". (Opp'n at 11.) Under New York law, however, "'[a] limitation on liability provision in a contract represents the parties' [a]greement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor.'" *Star Direct Telecom, Inc. v. Glob. Crossing Bandwith, Inc.*, No. 05-CV-6734T, 2012 WL 1067664, at *10 (W.D.N.Y. Mar. 22, 2012) (quoting *Metropolitan Life Ins. Co. v. Nobel Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 436 (1994)).

Finally, Plaintiffs fail to provide any reason why they would be entitled to recover punitive damages, treble damages, or attorneys' fees. (*See generally* Opp'n; Mot. at 13-14 (explaining these types of damages are not recoverable); Program Guide § 27.3 ("IN NO EVENT SHALL WE OR OUR AFFILIATES . . . BE LIABLE UNDER ANY THEORY OF TORT, CONTRACT, STRICT LIABILITY OR OTHER LEGAL THEORY FOR LOST PROFITS, LOST REVENUES, LOST BUSINESS OPPORTUNITIES, EXEMPLARY, PUNITIVE, SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES, EACH OF WHICH IS HEREBY EXCLUDED BY AGREEMENT OF THE PARTIES, REGARDLESS OF WHETHER SUCH DAMAGES WERE FORESEEABLE OR

11

WHETHER ANY PARTY OR ANY ENTITY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.").) Accordingly, to the extent Plaintiffs seek such recovery, those claims must be dismissed, along with any claim for damages exceeding $50,000.

### III.     IF NOT DISMISSED IN ITS ENTIRETY, THIS ACTION MUST BE TRANSFERRED TO EASTERN DISTRICT OF NEW YORK.

Plaintiffs incorrectly claim that the Motion to Transfer should be made by a Rule 12(b)(3) motion. (Opp'n at 20.) In fact, the very authority Plaintiffs cite in support says exactly the opposite: "Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013).

Plaintiffs' remaining arguments are equally without merit. Although Plaintiffs claim the Agreement did not "sweep within its purview" the non-contractual causes of action (Opp'n at 21), as explained in the Motion and this Reply, those causes of action arise solely out of the Agreement and are duplicative of Plaintiffs' breach-of-contract claim. Moreover, Plaintiffs fail to provide any legal support for their contention that a forum-selection clause does not apply to causes of action other than breach of contract. Courts routinely look to the language of a provision when interpreting the intention of the parties, and the language of the Agreement's forum-selection clause broadly applies to "any actions or claims arising under *or related to* this Agreement." (Program Guide § 44.2.) *See Manetti-Farrow, Inc. v. Gucci Am. Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) ("[F]orum selection clauses can be equally applicable to contractual and tort causes of action.").

Further, while Fiserv is not a signatory to the Agreement, it is sufficiently related to the contractual relationship such that the forum selection clause applies. *Manetti-Farrow, Inc.*, 858 F. 2d at 514 n.5. The very fact that Plaintiffs have

12

81958726.8

improperly added Fiserv to this suit (and now claim some improper conduct by Fiserv related to performance under the Agreement) is sufficient to show that they understood this.

Finally, as explained above, the Agreement was electronically signed and, despite Plaintiffs' misrepresentations, counsel for the parties previously conferred regarding transfer.

Therefore, if the Court does not dismiss Plaintiffs' claims in the entirety, it should transfer this case to the Eastern District of New York.

## IV.   CONCLUSION

Defendants respectfully request the Court dismiss Plaintiffs' Complaint in its entirety or, in the alternative, limit Plaintiffs' damages pursuant to the Agreement and/or transfer this case to the Eastern District of New York.

Dated:  February 14, 2022            Polsinelli LLP

                                     By:  */s/ John W. Peterson*
                                          John W. Peterson

                                          *Attorneys for Defendants Fiserv, Inc. and CardConnect, LLC*

13

81958726.8

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 14, 2022, a copy of the foregoing document was served via the Court's Electronic Filing System pursuant to Local Rule 5-3.2.1 and via U.S. Mail as follows:

>Law Offices of Foroozandeh, APC
>Majid Foroozandeh, Esq.
>23461 So. Point Dr., Suite 385
>Laguna Hills, CA 92653

/s/ *John W. Peterson*
John W. Peterson

14

81958726.8